[No. 17095.    Department One.    February 25, 1922.]

THE STATE OF WASHINGTON, *on the Relation of F. B. Carpenter, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Otis W. Brinker, Judge, Respondent.*[1]

CERTIORARI (6)—ADEQUACY OF REMEDY BY APPEAL. Certiorari to the supreme court will lie to review a judgment in mandamus directing the clerk of a school district to call an election, where an appeal would be inadequate because of the necessity of giving notice of election before an appeal could be heard.

ELECTIONS (46) — VOTES—CANVASS — OFFICERS — CUSTODY OF RETURNS. Laws 1921, p. 181, § 5, providing that election officers in school districts in class "A" counties and counties of the first class shall count the ballots and make return to the proper officers of the districts is not unworkable and uncertain because of failure to provide for the canvassing of votes by a canvassing board, since the count and canvass of votes by the precinct election officers and their return to the custody of the proper officers of the district establishes a complete record of the votes from which the result of the election can be determined by computation.

SAME (47)—CANVASS—POWERS OF OFFICERS. An officer or body authorized to canvass election returns performs only a ministerial duty in summing them up and declaring the result, unless the statute expressly gives such officers some additional power.

SAME (46). The board of directors of a school district being the custodian of its records and papers, a return by election precinct officers of votes cast in a school election in class "A" and first class counties should be deposited with the clerk of the school board, under Laws 1921, p. 179, which supersedes the provisions of the general school election law in those two classes of counties.

SAME (12)—ELECTION PRECINCTS—BOUNDARIES. The fact that boundaries of a school district are not coincident with boundaries of election districts as duly established in a county does not render the result of a school election uncertain, inasmuch as the qualification of the voter as a resident of the school district may be tested by the election officers.

SAME (31)—BALLOTS—STATEMENT OF QUESTIONS SUBMITTED. Under Laws 1921, p. 181, § 5, it is made the duty of the chairman of the board of county commissioners, the county auditor and the prose-

[1]Reported in 204 Pac. 797.

cuting attorney, to place upon the school election ballot in appropriate form, not only the question of officers, but also any other proposition which the officers of the district are authorized to submit to the voters, when advised in some appropriate official manner by the proper officers of the school district.

SAME (11)—SCHOOL ELECTIONS—NOTICE OF ELECTION.    Under Laws 1921, p. 179, which supersedes the general school election law (Rem. Code, §§ 4657-4663) the clerks of school districts in class "A" counties and counties of the first class are neither required nor authorized to give notice of school elections, that duty being reposed in a board composed of the chairman of the board of county commissioners, the county auditor and the prosecuting attorney.

Certiorari to review a judgment of the superior court for King county, Brinker, J., entered February 11, 1922, granting a writ of mandamus to compel the relator to give and publish notice of a general school election.    Reversed.

*Malcolm Douglas* and *Arthur Schramm, Jr.,* for relator.

*George F. Hannan,* for respondent.

PARKER, C. J.—This is a certiorari proceeding in this court, in which the relator, F. B. Carpenter, as clerk of school district No. 183 of King county, seeks review and reversal of a judgment of the superior court for that county, which judgment awarded a writ of mandamus against him as clerk of that school district. It is conceded that the relator is entitled to have that judgment reviewed in this court by this proceeding, since an appeal therefrom would be inadequate because the controversy has to do with the giving of a notice of election which must necessarily occur before an appeal from the judgment could be heard in this court.

The relator has at all times been the duly qualified and acting clerk of school district No. 183 of King county, which is a school district of the third class,

having only one school house therein. King county is a class A county. The boundaries of the district are not coincident with the boundaries of duly established voting precincts; that is, some of the voting precincts lie partly within and partly without the district.

On February 7, 1922, W. L. Carpenter, an elector, property owner and taxpayer of the district, commenced an action in the superior court for King county, seeking a writ of mandamus against this relator, F. B. Carpenter, as clerk of the district, commanding him to give and publish notice of a general school election of the district, to be held at the school house therein on the first Saturday of March, 1922; or to give and publish notice of a general school election of the district, to be held at the school house therein on the first Tuesday after the first Monday of May, 1922. This action was instituted after demand made by W. L. Carpenter upon F. B. Carpenter, as clerk of the district, and refusal by the latter to comply therewith.

The controversy in the superior court in the mandamus proceeding was, as it is here, as to whether the provisions of chapter 61, Laws of 1921, p. 179, changing the time, place and manner of holding school and municipal elections, are valid and applicable with reference to school districts of the third class in class A counties and counties of the first class; or whether the general school law with reference to school elections, as it existed prior to the enactment of chapter 61, Laws of 1921, remains the controlling law as to school elections in such school districts. This question having been submitted to the superior court for final decision upon facts above noticed, judgment was rendered therein awarding a writ of mandamus against the relator, as clerk of the district, commanding him

to give notice "of the regular annual school election at the school house in said district for the first Saturday in March, 1922." As evidencing the ground upon which the superior court rested its judgment, we note therein the following:

"It is now ordered and adjudged, that Chapter 61, Laws of 1921, are [is] inoperative and void insofar as it affects the aforementioned School District No. 183, and the election in said school district should be held under the laws that existed prior to the passage of said act."

The law of 1921 was enacted by the legislature of that year, manifestly for the purpose of having all elections in class A counties and counties of the first class, other than state, county and certain other specified elections, held under a unified system on the same day of the years within which such elections must be held. In so far as we need here notice the language of that law, it reads as follows:

"Sec. 2. That all city, town, township, school district, port district, park district, irrigation district, dike district, drainage district, drainage improvement district, diking improvement district, river improvement district, commercial waterway district, and all other municipal and district elections, whether general or special, and whether for the election of municipal or district officers or for the submission to the voters of any city, town, township or district of any question for their adoption or approval or rejection, shall be held in Class A counties and counties of the first class on the first Tuesday after the first Monday in May in the year in which they may be called:  .  .  .  (Laws of 1921, p. 179.)

"Sec. 5. It shall be the duty of the chairman of the board of county commissioners, the county auditor and the prosecuting attorney in Class A counties and counties of the first class in all city, town and district elections held under the provisions of this act to provide places for holding elections, to appoint the elec-

tion officers, to provide for their compensation, to provide ballot boxes and ballots or voting machines, poll books and tally sheets, and deliver them to the election officers at the polling places, to publish and post notices of calling such elections in the manner provided by law, and to apportion to each city, town or district its share of the expense of such election. (Laws of 1921, p. 181.)

"Sec. 6.    The election officers herein above provided for shall conduct such elections and shall receive and deposit ballots cast thereat in the proper and respective ballot boxes and shall count said ballots and make return thereof to the proper officers of the respective cities, towns and districts in the manner provided by law: *Provided, however,* There shall be but one set of election officials in each precinct. (Laws of 1921, p. 181.)

"Sec. 7.    At every election held under the provisions of this act, the polls shall be kept open from eight o'clock A. M. to eight o'clock P. M., and all qualified electors who shall be inside of the polling place at eight o'clock P. M. shall be allowed to cast their ballots at such election." (Laws of 1921, p. 181.)

If these provisions of the 1921 law be held operative and controlling in the conduct of school elections in school districts of the third class, in class A counties and counties of the first class, they supersede the election provisions of the general school law, §§ 4657-4663, Rem. Code (P. C. §§ 5161-5167), relating to the manner and time of holding school elections and making returns and record thereof in districts of the third class, in class A counties and counties of the first class. The contention made in support of the superior court's judgment, here on review, is, speaking generally, that the law of 1921 is by its terms so uncertain and unworkable as to render it void and of no effect, in so far as it relates to elections in school districts of the third class in class A counties and counties of the first class.

It is argued that the law is unworkable and uncertain in that it fails to provide any method for the canvassing of the votes of such school elections by any canvassing board or body, other than the counting and canvassing of the votes in each particular voting precinct of the district; that is, that there is not provided any one canvassing officer, board or body to declare the ultimate result of the election from the returns of the precinct election officers. It is true that this new law does not provide for so determining the ultimate result of the election, but this assumed defect and uncertainty in the law, we think, does not render an election held thereunder ineffectual, since it is provided therein that the election officers—manifestly meaning the precinct election officers—"shall count said ballots and make return thereof to the proper officers of the respective . . . districts . . ."

Assuming for the present that it can be determined who are the "proper officers of the . . . districts" to whom the precinct election officers shall make return, it becomes at once apparent that the returns made by the election precinct officers will all find their way into the hands of some person or persons authorized to receive them, who will become the lawful custodian thereof. When all of the election returns of the particular district are so collected together in the lawful custody of the proper officer or officers of the district, there will then be in one place, manifestly accessible to all who are interested, a complete record, which by computation capable of being made by any one versed in the most elementary principles of arithmetic will show who has become the duly elected candidate for office, and also whether or not any proposition voted upon has been adopted or rejected by the voters. It seems to us that the mere fact that the

result of the election, both upon the question of choosing officers and upon the adoption or rejection of a submitted proposition, is not further evidenced by some official summing up of the votes *pro* and *con,* does not argue that any such election would fail to become effective. It, of course, must be conceded that, if the election machinery provided by statute were so defective that there would be no record of a counting or canvassing of the votes either by the precinct officers or by some central canvassing board, the election would fail of results, and that it would, under such circumstances, of course, not decide anything. But that is not this case. Under the law of 1921, the precinct election officers of each particular precinct "count", that is, "canvass", the votes cast in their precinct; and when that is done and the returns so made from each precinct are all brought together in one place in charge of the proper officer or officers of the district, the ultimate result of the election is rendered just as certain as if, after the lodging of the returns with such proper officer or officers, they were summed up and the total vote *pro* and *con* as to candidates and propositions declared by some central officer or body.

We recognize that it is usual for election laws to have such total result computed and declared by some central officer or body, but this we think is more a matter of convenience and efficiency than an absolute legal necessity. It is the fact of the holding of the election and making some official record thereof from which the result can certainly be determined that renders the election effective, rather than the canvassing of the vote or the determining of the result and making a record thereof in any particular manner. It is elementary law that an officer or body authorized to canvass election returns performs only a ministerial duty,

which duty is the summing up of the returns as a mere matter of arithmetic and declaring the result of the election, unless the statute expressly gives such officer or board some additional power, which but few statutes do. 9 R. C. L. 1110; 20 C. J. 200; McCrary, Elections (4th ed.); § 261; Paine, Elections, § 603, etc.

Of course, a central canvassing body or officer must decide upon the genuineness and regularity of the returns, but that is done by reference to the face of the returns. No decisions have been called to our attention, nor have we been able to find any within the short time at our disposal, holding that the failure of a statute to provide for the canvass of election returns by some central canvassing officer or body will render the election ineffectual, when the votes have been counted and canvassed by the precinct election officers in their several precincts and return thereof made in compliance with law to some one central official custody, and such returns, by computation, will with certainty evidence the result of the election.

Now are we correct in assuming that there are some proper officers or officer of a school district of the third class to whom the election precinct officers provided for by the act of 1921 shall make their return of the result of the election in their respective precincts? This law does not in terms tell us what officers or officer of the district shall receive and have the custody of the returns; but it seems to us that, in view of the fact that the board of directors of the school district has general supervision over its affairs and custody of its property and papers, it, by its clerk, becomes the lawful custodian of all records, documents and papers belonging to the district, from which it follows that the election returns must be made to the district board of directors; that is, the returns shall be deposited

with the clerk of the district, which in effect places them in possession of the board. There may be some room for arguing that the returns should be made by the precinct election officers to the county superintendent of schools, in view of the provisions of § 4662, Rem. Code (P. C. § 5166), of the general school election law; since that section provides, among other things, that, following a school election held under that general law, "the clerk of the election shall forward the poll sheet thereof to the county superintendent, who shall preserve the same on file in his office"; but that, we think, is also superseded by the language of § 6 of the 1921 law above quoted, that the election officers, meaning, of course, the precinct election officers, shall "make return thereof to the proper officers of the respective . . . districts."

It is further argued that the law of 1921 is rendered uncertain and ineffectual, with reference to districts such as here involved, because of the fact that the boundaries of this particular district, as probably the boundaries of many others, are not coincident with the boundaries of election precincts as duly established within the county; but we do not think that makes the law unworkable. Of course, where an election precinct lies partly within and partly without the school district, only qualified voters who live within that portion of the election precinct within the district are qualified to vote at the school election. We fail to see why such qualification of the voter cannot be tested by the precinct election officers, as the law requires, as well as any other qualification of the voter may be tested as the law requires.

It is further argued that the law of 1921 is defective in that there is no method provided by which propositions to be voted upon by electors of the district at a

particular election may be placed upon the ballot. It seems to us that a reading of § 5 of the act above quoted will at once render it plain that it becomes the duty of the general election board or body, consisting of the chairman of the county commissioners, the county auditor and the prosecuting attorney, to place upon the election ballot, in appropriate form, not only the question of the election of officers, but also any other proposition which the officers of the district are authorized to submit to the voters thereof. It is true that the chairman of the county board, the county auditor and the prosecuting attorney, as the board or body to provide for the elections, may not be obliged to take notice of what propositions the proper officer of the district may desire to submit to the voters of. the district, without being advised in some appropriate official manner by the proper officers of the district; but when they are so officially advised, it seems plain that it would become their duty to put such question in appropriate form upon the ballot.

We are of the opinion that, while this law of 1921 is not as complete in details as is desirable, it is not so uncertain in the respects here noticed as to render it unworkable to the extent that the courts are privileged to hold it ineffectual and void for uncertainty with reference to school elections in school districts of the third class in class A counties and counties of the first class. It follows that, since the enactment of the 1921 law, the clerks of school districts of the third class, in class A counties and counties of the first class, are neither required nor authorized to give any notice for the holding of elections either upon the first Saturday of March or the first Tuesday after the first Monday of May; but that the notice for the election of such districts to be held in each year is to be given by the chair-

man of the board of county commissioners, the county auditor and the prosecuting attorney, under the law of 1921.

The judgment of the superior court awarding a writ of mandamus against the relator, F. B. Carpenter, as clerk of school district No. 183 of King county, is reversed, and the writ issued in pursuance of that judgment quashed and set aside.

MITCHELL, HOLCOMB, and MACKINTOSH, JJ., concur.