[No. 25223. *En Banc.* August 18, 1934.]

THE STATE OF WASHINGTON, *on the Relation of School District No. 92 of Clark County et al., Plaintiff,* v. THE STATE FINANCE COMMITTEE *et al., Respondents.*[1]

[1]Reported in 35 P. (2d) 500.

566

*Dale McMullen* and *Claude C. Snider,* for relators.

*The Attorney General* and *W. A. Toner, Assistant,* for respondents.

Tolman, J.—Relators by this proceeding seek the issuance of a writ of mandate directed to the respondents requiring them, in accordance with the bid of the state finance committee, to consummate the purchase of a certain issue of bonds, to accept the bonds as tendered by the school district, and to issue a warrant in payment therefor.

The material facts are undisputed. It appears that the school district, a duly organized school district of Clark county, proceeding under the law as it then existed and at a session of its directors held on April 3, 1934, adopted a resolution providing for the construction and equipment of an addition to the high school building in that district, and for the issuance of the bonds of the school district in the aggregate amount of eight thousand dollars for the purpose of providing funds to meet the cost of such improvement; that, on the same date, a notice of a special school district bond election was prepared and signed by the clerk of the school district, giving notice of a special bond election to be held under the resolution on May 5, 1934. All of this occurred before chapter 29, Laws of 1933, Ex. Sess., p. 76 (Rem. 1934 Sup., § 5147), became effective. That act, however, under the constitution did become effective on or about the 12th day of April, 1934.

Thereafter, disregarding that act, the clerk of the school district caused copies of such election notice

to be posted on April 18, 1934, and thereafter, in pursuance of such notice, a special election was held at the place appointed on the day named in the notice, and, proceeding under the old law, from among the voters first appearing at the polls election officers were selected who duly qualified. The election was held, and the election board so constituted certified returns showing that the bonds had been authorized by the voters, and thereafter, on May 7, 1934, the directors of the district certified such election returns to the county treasurer of the county.

Proper proceedings were had calling for bids, and the state finance committee submitted a bid, which was accepted by the directors of the school district as being, in their opinion, the best bid submitted for the bonds. Thereafter, a transcript of all of such proceedings was furnished to the state finance committee, and the bonds were apparently tendered to it in accordance with its bid. The state finance committee refused to consummate the purchase of the bonds because of noncompliance by the school district with chapter 29, Laws of 1933, Ex. Sess., p. 76 (Rem. 1934 Sup., § 5147).

The question here presented is, therefore, whether chapter 29 affects the present situation; and, if so, to what extent?

Relators seem to contend, first, that, the proceedings having been initiated before chapter 29 became effective, they were at liberty to proceed under the old law; second, that chapter 29 is not applicable to school elections in any event; and third, that chapter 29 is so incomplete, ambiguous and uncertain as to be wholly unworkable, and is therefore invalid and of no force and effect whatsoever.

The first question seems simple. There is no saving clause in chapter 29; and even if we consider that the adoption of the resolution calling an election

was the initial point of the proceedings, still the directors of the district were bound to take notice of the enactment of chapter 29 and of the fact that it would go into effect ninety days after the adjournment of the legislature, and to so time their action as to complete the proceedings before the old law ceased to be, or else to delay the initiatory action until the new law became effective. We are, however, inclined to the view that the proceedings, so far as obtaining authority from the voters is concerned, were initiated by the posting of the notices of the election, and those notices were clearly posted after chapter 29 became effective.

The second question also seems simple when our various statutory provisions preceding the enactment of chapter 29 are understood.

Chapter 29 reads:

"Section 1. The chairman of the board of county commissioners, the county auditor, and the prosecuting attorney in each county, shall constitute the election board for all elections and it shall be the duty of such board to provide places for holding elections; to appoint the precinct election officers; to provide for their compensation; to provide ballot boxes and ballots or voting machines, poll books and tally sheets, and deliver them to the precinct election officers at the polling places; to publish and post notices of calling such elections in the manner provided by this act, and to apportion to each city, town or district, its share of the expense of such election: *Provided,* That in the appointment of the precinct election officers by the county election board, said board shall designate the inspector and one judge in each precinct from that political party polling the highest number of votes for its first presidential elector in such county in the last preceding general election at which presidential electors were voted for, and one judge from that political party polling the next highest number of votes for its

first presidential elector in such county at said election. [Rem. 1934 Sup., § 5147.]

"Sec. 2. That section 5 of chapter 61 of the Laws of 1921 as amended by section 1 of chapter 79 of the Laws of 1933 (section 5147 Remington's Compiled Statutes) and section 3 of chapter 170 of the Laws of 1921 as amended by section 3 of chapter 279 of the Laws of 1927 (section 5152 Remington's Compiled Statutes) and all other acts or parts of acts in conflict herewith are hereby repealed."

The language "shall constitute the election board for all elections" is sweepingly broad, and we find nothing in the act or in previous legislation upon the subject which warrants us in anywise narrowing the effect of the broad language used.

By the second section of the act, chapter 61 of the Laws of 1921, p. 181, § 5, as amended by chapter 79 of the Laws of 1933, p. 373, § 1, and chapter 170 of the Laws of 1921, p. 666, § 3, as amended by chapter 279 of the Laws of 1927, p. 675, § 3, are all repealed, as well as all other acts or parts of acts in conflict with the provisions of chapter 29. Looking to these prior acts, we find that chapter 61 of the Laws of 1921, p. 181, § 5, as amended, became Rem. Rev. Stat., § 5147, and that it provided for an election board consisting of the chairman of the board of county commissioners, the county auditor, and the prosecuting attorney, in class A counties and counties of the first class. Likewise, chapter 170 of the Laws of 1921, p. 666, § 3, as amended (Rem. Rev. Stat., § 5152), provided for a like constituted board as an election board in counties other than class A and first class counties. Therefore, heretofore under these separate acts, just such an election board as is created by chapter 29 has functioned throughout the state in all counties and all elections, save only as other provisions of the law created exceptions.

Section 1 of chapter 279 of the Laws of 1927, p. 673, among other things, provides:

*"Provided further,* That this act shall not apply to general or special elections for any purpose in second or third class school districts, but all such elections of second and third class school districts in other than class A or first class counties, in any port district containing a school district of the first class, shall be held and the school district officers of such districts shall be elected and qualified, for the term, at the time and in the manner provided for school districts of the same class by chapters XX, XXI, XXXIII, XXXVII, and XXXVIII, of Title XXVIII, Remington's Compiled Statutes.'' (Rem. Rev. Stat., § 5150.)

Therefore, prior to the taking effect of chapter 29, elections in second and third class school districts in certain counties and situated as is the school district here involved, were specifically exempted from coming under the county election board, and were permitted to hold elections by virtue of other laws.

The legislature, of course, well understood this situation, and with the plain intent and purpose of bringing all elections of every kind under the control and direction of a county election board, enacted chapter 29 with its broad language relating to all elections, and repealed all acts or parts of acts in conflict therewith, among which, by the plainest implication, was chapter 279 of the Laws of 1927, p. 673, § 1.

Hence, it necessarily follows that, from and after the taking effect of chapter 29, no election could legally be held except under the direction and control of the county election board as established by that chapter.

The third question presented is somewhat difficult to answer intelligently without proceeding to lay down a set of advisory rules for the government of all interested, which, of course, is not within our province.

Since for a considerable number of years, all elections in the various counties of the state, save only elections in second and third class school districts, have been successfully carried on without resulting in litigation which has reached this court, we can only assume that the election boards have found the law workable.

As we have already said, chapter 29 brings all elections under the same head, and if the law has heretofore been workable for some, we see no reason why it should not now be workable for all.

Chapter 61, Laws of 1921, p. 179, was considered by this court in the case of *State ex rel. Carpenter v. Superior Court,* 118 Wash. 664, 204 Pac. 797, which was an anticipatory action brought for the purpose of testing the act, and after a somewhat exhaustive examination, the act was held to be not unworkable or uncertain to the extent of making it invalid. What is there said should be read in connection with what is here said. The act of 1921, covering all elections in class A counties and counties of the first class, not being unworkable, then chapter 29, requiring all elections in all counties to be held under a like board, cannot be unworkable.

The writ of mandate is denied.

STEINERT, HOLCOMB, and MAIN, JJ., concur.

MILLARD, J. (concurring)—An examination of the statutes in chronological sequence convinces me of the correctness of the majority opinion.

Chapter 61 of the Laws of 1921, p. 179, relates to elections in class A and first class counties. Section 5 of that act provides that it shall be the duty of the chairman of the board of county commissioners, the county auditor and the prosecuting attorney, in all city, town and district elections held under the provi-

sions of the act, to provide places for holding elections, to appoint the election officials, etc. This was Rem. Rev. Stat., § 5147.

Section 5, ch. 61, Laws of 1921, p. 179, was amended by ch. 53, Laws of 1923, p. 173, § 3. The only change was that, instead of reciting that "it shall be the duty," the amended section reads that the three officers named "shall constitute an election board for all elections held under the provisions of this act," the section still providing for the appointment by such election board of the precinct election officers.

Chapter 79, Laws of 1933, p. 373, amends Rem. Rev. Stat., § 5147. The amended section provides that the same three officials "shall constitute an election board for all elections held under the provisions of this act," and further provides that such board shall appoint the precinct election officers. The statute further provides:

"In the appointment of the precinct election officers by the county election board, said board shall designate the inspector and one judge in each precinct from that political party polling the highest number of votes for governor in such precinct in the last preceding general election, and one judge from that political party polling the next highest number of votes for governor in such precinct."

It will be noted that Rem. Rev. Stat., § 5147, had to do with elections in class A and first class counties. Section 5152 governed elections in other than class A and first class counties.

Chapter 170, Laws of 1921, p. 665 (Rem. Rev. Stat., §§ 5150, 5151), fixes the time for holding city, port district and school district elections in other than class A and first class counties. Section 3 of that act provided that

"It shall be the duty of the chairman of the board of county commissioners, the county auditor and the

prosecuting attorney in all city, town and district elections held under the provisions of this act to provide places for holding elections, to appoint the election officers, etc.''

That section was amended by ch. 279, Laws of 1927, p. 675, § 3, which provided that the same three officers designated in the foregoing act ''shall constitute an election board for all such elections'' and made it the duty of such board to provide places for holding elections under the provisions of the act, to appoint the election officers, etc. The 1927 amendment did not materially amend ch. 170 of the Laws of 1921, p. 666, § 3.

Chapter 29 of the Laws of 1933, Ex. Sess., p. 76, provides that the chairman of the board of county commissioners, the county auditor and the prosecuting attorney of such county ''shall constitute the election board for all elections,'' and makes it the duty of such board to provide places for holding such election, to appoint the precinct election officers, etc. The statute further provides:

''That in the appointment of the precinct election officers by the county election board, said board shall designate the inspector and one judge in each precinct from that political party polling the highest number of votes for its first presidential elector in such county in the last preceding general election at which presidential electors were voted for, and one judge from that political party polling the next highest number of votes for its first presidential elector in such county at said election.'' Rem. 1934 Sup., § 5147.

The statute specifically repeals ch. 61 of the Laws of 1921, p. 181, § 5, as amended by ch. 79, Laws of 1933, p. 373, § 1, Rem. Rev. Stat., § 5147. Those sections had to do with the elections in class A and first class counties. Chapter 29 specifically repeals ch. 170, Laws of 1921, p. 666, § 3, ch. 279, Laws of 1927, p. 675, § 3,

and Rem. Rev. Stat., § 5152, which had to do with the elections in other than class A and first class counties, "and all other acts or parts of acts in conflict herewith are hereby repealed."

It may appear inconceivable that legislation would be enacted which would even tend to bring matters affecting education within the realm of partisan politics. Yet, however regrettable it may be, that is the effect of chapter 29, Laws of 1933, Ex. Sess., p. 76. Our function is to interpret the law. Our province is not legislative. As said in *North Spokane Irrigation Dist. v. Spokane County,* 173 Wash. 281, 22 P. (2d) 990,

"But whatever may have been the thought of the legislature, we are not concerned with its policy or its impolicy. It is not the province of the court to judge of the wisdom or expediency of a statute when the intention of the legislature is clearly expressed.

" 'When the meaning of a statute is clear, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction.' Lewis' Sutherland, Statutory Construction, § 367."

BLAKE, J. (dissenting)—I dissent.

"The repeal of statutes by implication is not favored. . . . Furthermore, the courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears. The implication must be clear, necessary, and irresistible." 59 C. J. 905, 908.

The first legislature enacted a code of education, being entitled:

"An Act to establish a general uniform system of Common Schools in the State of Washington, and declaring an emergency." Laws 1889-90, p. 348.

Sections 54 to 60, inclusive, of that act set up a complete mechanism for holding school elections. The substance of those sections was carried successively into the codes of education enacted in 1897 (chap. 118, Laws of 1897, p. 417, §§ 149, 155) and 1909 (Laws of 1909, chap. 97, p. 346). The provisions now appear in Rem. Rev. Stat., §§ 5021 to 5026, inclusive, as a part of the code of education.

Now, the effect of the majority holding is that these sections of the code of education have been repealed by chapter 29, Laws of 1933, Ex. Sess., p. 76. That act is entitled:

"An Act relating to elections and to precinct election boards and the appointment thereof and repealing section 5 of chapter 61 of the Laws of 1921 as amended by section 1 of chapter 79 of the Laws of 1933 and repealing section 3 of chapter 170 of the Laws of 1921 as amended by section 3 of chapter 279 of the Laws of 1927."

The enacting clause (Rem. 1934 Sup., § 5147) is as follows:

"The chairman of the board of county commissioners, the county auditor, and the prosecuting attorney in each county, shall constitute the election board for all elections and it shall be the duty of such board to provide places for holding elections; to appoint the precinct election officers; to provide for their compensation; to provide ballot boxes and ballots or voting machines, poll books and tally sheets, and deliver them to the precinct election officers at the polling places; to publish and post notices of calling such elections in the manner provided by this act, *and to apportion to each city, town or district, its share of the expense of such election.*" (Italics mine.)

The words which I have italicized seem to me to evidence a clear legislative intent that the act should not apply to elections held by any less municipal unit than

the whole county. Certainly, there is no clear intent manifest that it should be applied to units such as school districts, irrigation districts and drainage districts, for which a complete mechanism for holding elections is set up in the respective codes providing for and creating such districts. To me, the implication is not "clear, necessary and irresistible" that the legislature intended to wipe out the provisions of all these codes with respect to elections, by simply saying ". . . all other acts or parts of acts in conflict herewith are hereby repealed." Chap. 29, Laws of 1933, Ex. Sess., p. 76. On the contrary, considering the title, purpose and terms of chapter 29, I can see no conflict therein with the provisions contained in the code of education relating to elections to be held by school districts.

BEALS, C. J., MITCHELL, and GERAGHTY, JJ., concur with BLAKE, J.