666 So.2d 1366 (1996)
Kenneth C. MISSO
v.
William "Boo" OLIVER.
No. 94-CA-01054-SCT.
Supreme Court of Mississippi.
January 11, 1996.
*1367 James M. Ward, Ward & Williamson, Starkville, for Appellant.
Ellis Turnage, Cleveland, for Appellee.
En Banc.
SULLIVAN, Presiding Justice, for the Court:
This is an appeal and cross-appeal taken from the September 23, 1994 judgment of the Circuit Court of Noxubee County. On November 3rd and 5th the election commission met and canvassed the returns of a special election for supervisor in Noxubee County. The election commission decided to open sealed ballot envelopes and count these contested votes, which changed the outcome of the election, making William "Boo" Oliver (Oliver) the winner over Kenneth C. Misso (Misso). On November 19, 1993, Misso contested the official results of the November 1993, special election for district 2 supervisor in Noxubee County. After the circuit judge heard and denied various pretrial motions, the case was tried before a jury on September 21, 1994. The jury returned with a verdict stating that they could not determine who received the most legal votes. The circuit judge ordered that the election and certification of Oliver be vacated and that the board of supervisors declare a vacancy. Later, the supervisors appointed Oliver to the vacated position.

FACTS
A special election was held for supervisor in District 2, County of Noxubee on November 2, 1993. Thereafter on the 3rd and 5th of November the election commission met in Noxubee County to canvass the returns. The election total as certified by the managers of the election, prior to the canvass by the election commission, was 624 Misso and 611 Oliver. In the election boxes presented to the election commission there were twelve rejected or challenged ballots. Those rejected and challenged ballots bore the signature of the election manager and the name of the voter on the outside of a sealed strong envelope. On the day of the canvass the election commission opened these twelve ballots, *1368 ruled on the challenges to those ballots and decided to count them all in a contested vote of 3-2 by the election commission. All twelve votes went to Oliver, and after the recount the total was 632 Misso and 640 Oliver.
At the time, and during the counting of the election returns, representatives of the Attorney General's office advised the commission that under Miss. Code Ann. § 23-15-579 (1991) the decision of the managers of the election to challenge or reject the ballot was a decision and action over which the election commission had no authority. However, the election commission's own attorney advised the commission differently, stating that the decision to recount was within the commission's authority. The relevant code sections, Miss. Code Ann. § 23-15-579 and § 23-15-601 (1991), provide no absolute guidance on the subject.
On November 19, 1993, Misso filed a Complaint asking the court to determine whether the election commission had the authority to open the twelve challenged or rejected ballots in the November 3 special election. The case was tried before a jury on September 21, 1994.
In Misso's case-in-chief, he testified and then presented the testimony of Carolyn Pugh, an election commissioner of Noxubee County. Ms. Pugh testified that the election commission had not opened challenged or rejected envelopes in the past, and that this policy was codified in the Election Code Handbook. It was her understanding that the authority to decide the challenges resided in the election managers.
Next, both parties stipulated that the next witness' testimony would be cumulative. That witness was Ms. Mary Allsup, who is also an election commissioner.
After the stipulation, Misso rested his case-in-chief. Oliver then moved for a directed verdict. He stated that because no evidence had been produced by Misso in regard to the legality or illegality of the twelve votes, he was entitled to a directed verdict. Misso countered by stating that this was not the issue before the court, but rather, the ability of the election commission to go behind the returns and determine the legality or illegality of the votes. The lower court denied the directed verdict.
During Oliver's case-in-chief, the circuit clerk of Noxubee County testified that according to the official county voting records maintained in his office, each of the twelve voters who cast the twelve challenged ballots were duly registered and qualified electors of one of the five voting precincts which comprise supervisory district 2 of Noxubee County. After Oliver presented his case-in-chief, and at the close of all evidence, Oliver renewed his motion for a directed verdict and the court again denied his motion.
What seems to be a major point of confusion by both parties in the lower court, was what was the actual issue before the lower court. Misso presented the issue to the lower court, in his complaint, and at trial, as the authority of the election commission to open the rejected or challenged ballots. Oliver, on the other hand, presented the issue to the lower court as whether the twelve rejected or challenged votes were legal (and should have been counted) or illegal (properly rejected or challenged). Both parties were working under a different assumption, and presented the issues to the lower court as such. Given these facts, it is not hard to understand the confusion the jury must have felt in coming to its decision, which in fact was no decision at all. "We, the Jury, cannot determine[] which candidate received the greatest number of legal votes at the Noxubee County Special Election held on November 2, 1993, for District 2 Supervisor." The circuit judge ordered that the election and certification of Oliver be vacated and that the board of supervisors declare a vacancy. The supervisors appointed Oliver to the vacated position. Misso, aggrieved of the lower court's ruling, appealed to this Court. Oliver cross-appealed.

INTRODUCTION
As an initial matter, this Court notes that since this appeal has been filed this case *1369 has become moot as to the litigating parties. Since the filing of this appeal the general election for Noxubee County, District Two Supervisor has been held, and a new Supervisor elected. This case is moot because even if Misso persuades us that the trial court erred, it is impossible to reinstate Misso, or hold another special election, since the general election has since been held. Like numerous other election cases in which review is sought through direct appeal, this one is moot in terms of this Court's ability to afford specific relief to the appellant.
Unfortunately, it is a fact of life that the appellate process normally takes longer than the electoral process. As a result, election cases often present questions "capable of repetition, yet evading review." Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).
This Court adopted the doctrine of "capable of repetition yet evading review" as an exception to the mootness doctrine in Strong v. Bostick, 420 So.2d 1356, 1359 (Miss. 1982). In Strong this Court set forth this exception and "noted that it is limited to situations where (1) the action complained of is too short in duration to be fully litigated before its expiration and `(2) [t]here [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" Mississippi High School Activities Assoc., Inc. v. Coleman, 631 So.2d 768, 772 (Miss. 1994) (quoting Strong, 420 So.2d at 1359 (quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348-49, 46 L.Ed.2d 350 (1975))). Since the Strong decision the exception to the mootness doctrine, "capable of repetition, yet evading review" has undergone some expansion. In Coleman this court noted that subsequent to the Strong decision this Court has applied the "first prong, as though it were two separate prerequisites to be met before the exception may be applied, to wit: (1) the duration of the challenged action must have been short and (2) the time required to complete an appeal is lengthy." Coleman, 631 So.2d at 773 (citing M.A.C. v. Harrison County Family Court, 566 So.2d 472, 474 (Miss. 1990)) (footnote omitted). The Coleman Court also noted that in Pascagoula Sch. Dist. v. Doe, 508 So.2d 1081, 1084 (Miss. 1987), "this Court simply found the case not moot, without a discussion of whether the same party would be subject to the same action again." Coleman, 631 So.2d at 773. In the case sub judice the complained of action will certainly recur, however, the appellant Misso will probably not be subject to the same action again.
The case at hand falls directly in the exception for mootness cases, or the "matters of public interest exception" pronounced in Sartin v. Barlow, 196 Miss. 159, 16 So.2d 372, 376 (1944), which stated:
[T]hat there is an exception to the general rule as respect[] [to] moot cases, when the question concerns a matter of such a nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct.
Because this case will control future elections and the need for resolution reflects a continuing controversy in the election area and this appeal is one of public interest this Court will entertain this appeal.
Misso's submitted brief cites four issues presented for appellate review. Yet, according to Misso, "for the sake of brevity," his brief addresses only one of the four issues: the circuit court's denial of his motion for summary judgment. His brief then goes on to discuss the issue of whether the board of election commissioners has the authority to canvass the returns and make a determination to count or not count challenged ballots.
This Court has held that "a complaining party has `an affirmative duty to specifically address the issue and provide authoritative support for its position.' When the party fails to do so, this Court is under no obligation to consider the case." Stevens v. Lake, 615 So.2d 1177, 1186 (Miss. 1993) (quoting R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990)). "This Court has held there is no obligation to consider *1370 any assignment of error unsupported and unaddressed in a party's submitted brief(s)." Gex v. Mississippi Bar, 656 So.2d 1124, 1129 (Miss. 1995) (citing Matter of Estate of Mason, 616 So.2d 322, 327 (Miss. 1993)). Since this Court is not obligated to discuss issues not presented by the parties in their briefs, this opinion will discuss Misso's first assignment of error, and then address Oliver's cross-complaints.

I.

WHETHER THE COURT ERRED IN REFUSING TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.
Misso argues that the lower court erred in denying his motion for summary judgment. This Court has stated that under Miss.R.Civ.Pro. 56, "[t]he party moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists, and that they are, based on the existing facts, entitled to judgment as a matter of law." Daniels v. GNB, Inc., 629 So.2d 595, 600 (Miss. 1993) (citations omitted). In American Legion Ladnier Post Number 42, Inc. v. City of Ocean Springs, 562 So.2d 103, 106 (Miss. 1990), this Court asserted that even in cases where there is doubt as to whether there is a genuine issue of material fact, "the trial judge should err on the side of denying the motion and permitting a full trial on the merits." Id. (citations omitted). "A motion for summary judgment generally should be denied where the record is incomplete regarding any material fact." Id. (citing Smith v. Sanders, 485 So.2d 1051, 1054-55 (Miss. 1986)).
The lower court found based on the motion filed by Misso and affidavits attached thereto that the case did present issues of material fact. The lower court stated in its denial of the summary judgment that
there appeared to be questions among the election commissioners themselves as to whether the actions taken were appropriate. This is evidenced by the vote of 3-2 on the allowing of a dozen ballots. Further, the matter of whether those votes allowed by the election commission were legal votes, is a disputed matter among the commissioners themselves, as well as between the majority of the commissioners and the election managers.
Because there were material issues of fact presented to the lower court, its decision not to grant a summary judgment was correct, and should not be overturned on appeal.

II. (Cross-Complaint)

WHETHER THE BOARD OF ELECTION COMMISSIONERS HAS THE AUTHORITY TO CANVASS THE RETURNS AND MAKE A DETERMINATION TO COUNT OR NOT COUNT CHALLENGED BALLOTS REJECTED BY THE MANAGERS OF AN ELECTION?
Four provisions of the Mississippi Code Annotated, §§ 23-15-233, -573, -579, -601 (1991) are applicable to this analysis and are set out below.

Miss. Code Ann. § 23-15-233 (1991). Duties of election managers.
The managers shall take care that the election is conducted fairly and agreeably to law, and they shall be judges of the qualifications of electors, and may examine, on oath, any person duly registered and offering to vote touching his qualifications as an elector, which oath any of the managers may administer.

Miss. Code Ann. § 23-15-573 (1991). Certain persons not to vote except by affidavit.
No person whose name does not appear upon the pollbooks shall be permitted to vote in an election; but if any person offering to vote in an election whose name does not appear upon the pollbook shall make affidavit before one (1) of the managers of election in writing that he is entitled to vote, or that he has been illegally denied registration, his vote may be prepared by him and handed to the proper election *1371 officer who shall enclose the same in an envelope with the written affidavit of the voter and seal it and mark plainly upon it the name of the person offering to vote. In canvassing the returns of the elections, the executive committee in primary elections, or in a general election the election commissioners, shall examine the records and allow the ballot to be counted, or not, as shall appear to be legal.

Miss. Code Ann. § 23-15-579 (1991). Procedure when vote challenged.
All votes which shall be challenged at the polls, whether the question be raised by a manager or by another authorized challenger, shall be received when voted, but each of such challenged votes shall, by one (1) of the managers or clerks, be marked on the back "CHALLENGED" and all such challenged votes shall then be placed in one or more strong envelopes; and when all the unchallenged votes have been counted, tallied and totaled the challenged votes shall then be counted, tallied and totaled and a separate return shall be made of the unchallenged votes and of those that are challenged. The envelope or envelopes containing the challenged votes, when counted and tallied, shall be securely sealed with all said challenged votes inclosed therein and placed in the box with the unchallenged votes. Provided, that when a vote is challenged at the polls it shall so clearly appear in the unanimous opinion of the managers, either by the admissions or statements of the person challenged or from official documentary evidence, or indubitable oral evidence then presented to the managers, that the challenge is well taken, the vote shall be rejected entirely and shall not be counted; but in such case the rejected ballot, after it has been marked by the challenged voter, shall be marked on the back "REJECTED" and the name of the voter shall also be written on the back, and said vote and all other rejected votes shall be placed in a separate strong envelope and sealed and returned in the box as in the case of challenged votes. The failure of a candidate to challenge a vote or votes at a box shall not preclude him from later showing, in the manner provided by law, that one or more votes have been improperly received or counted or returned as regards said box. If the managers of an election believe a challenge of a voter is frivolous or not made in good faith they may disregard such challenge and accept the offered vote as though not challenged.

Miss. Code Ann. § 23-15-601 (1991). Canvas of returns and declaration of results by commissioners of election; determination of tie vote.
When the result of the election shall have been ascertained by the managers they, or one (1) of their number, or some fit person designated by them, shall, by noon of the second day after the election, deliver to the commissioners of election, at the courthouse, a statement of the whole number of votes given for each person and for what office; and the commissioners of election shall canvass the returns, ascertain and declare the result, and, within ten (10) days after the day of the election, shall deliver a certificate of his election to the person having the greatest number of votes... .
The true issue of this case is whether the election commission can override or review the decision of an election manager who marked a ballot as rejected or challenged. The above cited Mississippi statutes are silent as to whether the commission has the authority to open these sealed ballots.
These statutes specifically grant to the election managers, under Miss. Code Ann. §§ 23-15-233, -579 (1991), the authority to judge the qualifications of the electors. Misso argues that had the legislature intended to give authority to the election commission to review the challenges upheld by the managers it would have done so with the same specificity as the authority was granted to review affidavit ballots under Miss. Code Ann. § 23-15-573 (1991). Oliver counters that under Miss. Code Ann. § 23-15-601 (1991) it is not the function of the election commission to *1372 merely accept the managers' challenges at face value. Rather the election commissioners make their own determinations as to whether the challenged ballots should properly be counted or not counted and then declare the final results.
Both parties cite the Mississippi Supreme Court decision of Oglesby v. Sigman, 58 Miss. 502 (1880) as dispositive for their side. This is the only case that has touched on the point of the authority and duties of the election commission to canvass the vote. This case concerned 506 ballots which were counted by inspectors and challenged at the polls. At that time the state of Mississippi had a statute which prohibited a ballot being accepted which "has on its back or face any device or mark, other than the names of persons, by which one ballot may be distinguished from another." Id. at 508. These ballots were cast in violation of that statute. The Court in Oglesby stated that "[t]he inspectors [managers] are to judge of the qualifications of the electors, so as to receive or reject ballots offered by them, ... and the commissioners ... may canvass the returns so made to them, and see that the result of the election at each precinct as certified to them by the inspectors and clerks is correct, according to the returns." Id. at 506-507. The commissioners "are to canvass the returns; that is, they are to scrutinize the acts of those engaged in holding the election ... and determine from such returns who received the greatest number of legal votes... ." Id. at 507. The Court went on to state that:
It is true that commissioners of election are not judicial officers, ... but they are charged with the duty of canvassing returns... . If they ascertain from the list of voters that persons not registered, and therefore not legal voters, have cast ballots, they cannot correct that, because of inability to ascertain which ballots are legal and which are not; but if they find in the ballot-boxes ballots declared by law to be illegal, and such as shall not be counted, it is their plain duty to reject them, and if, in canvassing the returns, they ascertain that the inspectors, in disregard of law, have counted ballots it says shall not be counted, that error should be corrected by the canvassers, as certainly as an error of arithmetic should be. The law makes the inspectors [managers] judges of the qualification of electors from necessity, because they are to receive the ballots... .
Id.
The Court went on further to state that the commissioners should "scrutinize and correct, as far as may be done by the data furnished by the face of the returns, without a resort to evidence aliunde, should reject, as the inspectors should have done, ballots as the law says shall be counted." Id. at 509.
None of the cases or statutes cited by either party seems to answer the exact question of whether the election commission has the authority to open the ballots certified by the managers as rejected or challenged, or whether their duty merely to canvass the sealed ballots to determine if the requirements have been met.
The legislature has not laid out in the Mississippi Code the exact duties of the election commission in a case such as the one presented and this Court has not addressed this exact issue before.
Since this issue has not been decided by this Court a look toward other states is helpful. In Alabama a recent decision by its supreme court held that canvassers (election commissioners) "are simply to make a correct statement of the votes cast for each candidate, from the face of the returns, and to ascertain by arithmetical computation who has the majority, and so to certify, or declare" a winner. Roe v. Mobile County Appointment Bd., No. 194061, 1995 WL 121871, at [*]36, ___ So.2d ___ (Ala. March 14, 1995) (citation omitted). That court went on to state that "[i]t is settled, without controversy, that mere canvassers possess no judicial or discretionary powers, and cannot go behind the returns." Id. at ___-___ (citations omitted).
In an early case in Indiana the Supreme Court stated:

*1373 [T]he duty of a board of canvassers of an election is simply to receive and count the returns of votes, and not to judge of their validity, or of any fraud affecting them, that question being for another specially appointed tribunal, upon a case properly brought after the board have declared the result, the action of the board in this matter is ministerial only... .
Kisler v. Cameron, 39 Ind. 488, 489, 491 (1872) (quoting Moses on Mandamus 90).
In the state of Kansas the Supreme Court in an early decision determined that:
[I]t is a common error for a canvassing board to overestimate its powers... . Its duty is almost wholly ministerial. It is to take the returns as made to them from the different voting precincts, add them up, and declare the result. Questions of illegal voting, and other fraudulent practices, are to be passed on to another tribunal. The canvassers are to be satisfied of the genuineness of the returns, that is, that the papers presented to them are not forged and spurious; that they are returns, and are signed by the proper officers; but when so satisfied, they may not reject any returns because of informalities in them, or because of illegal and fraudulent practices in the election. The simple purpose and duty of the canvassing board is to ascertain and declare the apparent result of the voting.
Lewis v. Commissioners of Marshall County, 16 Kan. 102, 108 (1876).
The reasoning for the ministerial duty imposed upon the board of commissioners was articulated well in the case of Attorney General v. Steers, 44 Mo. 223 (1869), in which the court stated:
To determine upon the legality of votes is a judicial proceeding before a court competent to hear and adjudicate, where the parties interested can appear and present their respective claims. To allow a ministerial officer arbitrarily to reject returns at his mere caprice or pleasure is to infringe or destroy the rights of parties, without notice or opportunity to be heard  a thing which the law abhors and prohibits. Admit the power, and there will be no uniformity. One canvassing officer will reject for one thing, and another for a different matter; and no man can tell whether he is legally elected to an office until he consults the notions of a canvasser. The exercise of such power is subversive of the rights of the citizen, and dangerous and fatal to the elective franchise... . The law has provided tribunals with ample power to hear and determine all questions pertaining to elections, and pass upon the validity of votes, where the parties interested can appear and have a fair trial upon pleadings and proof. When a ministerial officer leaves his proper sphere, and attempts to exercise judicial functions, he is exceeding the limits of the law and guilty of usurpation.
Id. at 228.
"It is elementary law that [a] body authorized to canvass election returns performs only a ministerial duty, which duty is the summing up of the returns as a mere matter of arithmetic and declaring the result of the election, unless the statute expressly gives such board some additional power, which but few statutes do." State ex rel. Carpenter v. Superior Court for King County, 118 Wash. 664, 204 P. 797, 799 (1922) (citation omitted).
In Thompson v. Talmadge, 201 Ga. 867, 41 S.E.2d 883, 893 (1947), that court stated that canvassers "were subject to the general, if not indeed the universal, rule of law applicable to election canvassers. That rule is that they are given no discretionary power except to determine if the returns are in proper form and executed by the proper officials and to pronounce the mathematical result... . They can neither receive nor consider any extraneous information or evidence, but must look only to the contents of the election returns." Id. 41 S.E.2d at 893 (citing 29 C.J.S. Elections § 161 (1947); 18 Am.Jur. Elections § 347 (1947); People ex rel. Sherwood v. State Bd. of Canvassers, 129 N.Y. 360, 29 N.E. 345 (1891); some citations omitted). *1374 The Georgia court went on to state that "[t]hese authorities, which accord with the generally accepted rule, and we may say the universal rule so far as we are aware, show" that canvassers may only look to the contents of the election returns. Id. 41 S.E.2d at 893-94. The Alabama supreme court stated that "[t]he basis of the principle lies in the fact, that a canvassing board has no power to discard or reject returns of votes, which on their face appear genuine and regular in form, on the ground of frauds committed in the election." Roe v. Mobile County Appointment Bd., No. 194061, 1995 WL 121871, at [*]37, ___ So.2d ___ (Ala. March 14, 1995) (citing Lewis v. Commissioners, 16 Kan. 102 (1876); Kisler v. Cameron, 39 Ind. 488 (1872)).
Black's Law Dictionary 207 (6th ed. 1990) defines canvass as "[t]he act of examining and counting the returns of votes cast at a public election to determine authenticity." The dictionary goes on to define ministerial duty on page 996 as "[o]ne regarding which nothing is left to discretion  a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist." Lastly, Black's Law Dictionary 996 (6th ed. 1990) defines ministerial function as "[a] function as to which there is no occasion to use judgment or discretion." Id. (citing Hood Motor Co., Inc. v. Lawrence, 320 So.2d 111, 115 (La. 1975).
In a factually similar case, the Supreme Court in West Virginia in State ex rel. Wilson v. County Court of Barbour County, 145 W. Va. 435, 114 S.E.2d 904 (1960), held that the statute which granted the board of commission the right to canvass "does not authorized or empower the board of canvassers for [an] election to open the sealed package of ballots or to count or consider the validity of the ballots cast at such election." Id. 114 S.E.2d at 910 (citations omitted).
This Court has held before that the duty of the election commission, in the arena of the qualification of a candidate for public office, is a quasi-judicial role and not a ministerial one. Powe v. Forrest County Election Comm'n, 249 Miss. 757, 765, 163 So.2d 656, 659 (1964). However, this is the only instance in which this Court has given the election commission such power. In the instant case, the determination for whether a vote should be challenged or rejected lies solely within the discretion of the managers. See Miss. Code Ann. §§ 23-15-233, -579 (1991). Thus, the duty imposed upon the election commission, with regard to the qualification of the elector, is purely ministerial. If there is any doubt as to the validity of these contested or rejected ballots the question of legality should be one determined by a court of law.
A holding by this Court that the election commission may in fact review the decision of the election managers with regard to the qualifications of voters would result in the election commission becoming a forum in which the qualifications of voters could be contested and/or reviewed after the ballots are cast and challenged. It would authorize a judicial role in an area not previously specifically granted by statute. The election commission should only perform ministerial duties (beside the decision as to the qualification of a candidate for office). In the future decisions as to the validity of challenged or rejected votes should be determined by a court of law.

III.

WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO GRANT OLIVER'S MOTIONS FOR DIRECTED VERDICT AT THE END OF MISSO'S CASE IN CHIEF AND AT THE CLOSE OF ALL EVIDENCE INASMUCH AS MISSO OFFERED NO EVIDENCE WHICH WOULD SUPPORT A VERDICT THAT EITHER OF THE 12 CHALLENGED BALLOTS WAS ILLEGALLY CAST.
Oliver argues that the circuit court committed error when it denied his motion for a directed verdict at the close of Misso's case-in-chief and at the close of all evidence. "When a defendant moves for a directed *1375 verdict at the close of the plaintiff's case-in-chief, the circuit court must consider the evidence before it at that time in the light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable inferences that may reasonably be drawn from the evidence." Hall v. Mississippi Chem. Express, Inc., 528 So.2d 796, 798 (Miss. 1988).
Oliver argues that in this election contest, the burden of going forward with proof of illegality of votes is placed squarely on Misso. "The burden to prove [illegal votes] in conjunction with the votes at issue rests with the party seeking to invalidate the ballots." Rogers v. Holder, 636 So.2d 645, 647 (Miss. 1994) (citing Wilbourn v. Hobson, 608 So.2d 1187, 1193 (Miss. 1992)).
Oliver is absolutely correct that if the party is contesting the legality or illegality of votes they have the burden of proof. However, the issue before the lower court was not whether the votes were indeed legal, but if the commission had the authority to review the decisions of the election managers with regard to the twelve ballots, and if they did then those ballots are in fact legal and Mr. Oliver should prevail. On the other hand, if the commission did not have the authority to review the decision of the election managers, then those twelve electors who cast the ballots were in fact, for some unknown reason, not qualified to vote, then the ballots were clearly illegal and the jury should have been instructed to return a verdict in favor of Mr. Misso.
Thus, the controversy here was with regard to the ability of the commission to go behind the managers and open the sealed ballots, not the legality or illegality of the challenged or rejected votes.
As has been asserted in the previous issue, the board of commissioners did not have the authority to open the sealed ballots as their duty is merely to canvass the votes, not go behind the face of these sealed ballots. The whole matter should have proceeded in this manner. First, the proper objections should have been made at the polling place. Thereafter, objections to voters should have been ruled upon in the statutory fashion and the commission should have been bound by the decision of the election managers and Mr. Misso declared the victor. Then Oliver could have filed his election contest under Miss. Code Ann. § 23-15-951 (1991) with a trial held in circuit court on the issue of the qualifications of the voters and the propriety of the ruling by the managers.

IV.

WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO GRANT OLIVER'S MOTION FOR J.N.O.V. OR IN THE ALTERNATIVE, A NEW TRIAL?
Oliver next argues that the lower court erred in not granting a judgment notwithstanding the verdict, or in the alternative a new trial. "[A] motion for J.N.O.V. tests the legal sufficiency of the evidence supporting the verdict. It asks the court to hold, as a matter of law that the verdict may not stand." Goodwin v. Derryberry Co., 553 So.2d 40, 42 (Miss. 1989) (citing Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984) (quoting Jesco, Inc. v. Whitehead, 451 So.2d 706, 713 (Miss. 1984))). "In deciding a motion for judgment notwithstanding the verdict, the trial court must consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may be drawn therefrom." Goodwin, 553 So.2d at 42. To review a denial of a judgment notwithstanding the verdict this Court must
consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [this Court is] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable *1376 and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Sperry-New Holland v. Prestage, 617 So.2d 248, 252 (Miss. 1993) (citing Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss. 1992) (citing Litton Systems, Inc. v. Enochs, 449 So.2d 1213, 1214 (Miss. 1984))). This standard of review is "predicated upon the fact that the trial judge applied the correct law." Sperry-New Holland, 617 So.2d at 252.
As was stated in the previous issue, both parties were working under a different assumption in the lower court. The evidence adduced by Misso, dealt with the propriety of the decision by the election commission to open the sealed ballots, and Oliver was presenting evidence about the legality of the twelve challenged votes that were opened by the election commission. Oliver was working one step ahead of Misso and did not address that issue to the lower court.
Oliver is asking this Court to hold that the lower court should have overruled the jury's verdict that it did not know who received the most legal votes, and hold as a matter of law that he received the most legal votes. However, that was not the issue before the lower court. What Oliver needed to ask the lower court was to hold that the election commission had the right to open the sealed ballots, and determine that they were legal, but he did not present any evidence at the trial to sustain this verdict.
The jury was unable to determine which testimony to believe and found the evidence insufficient on both sides. Oliver argues that the jury's verdict was against the substantial weight of the evidence. To the contrary, the jury's verdict was a statement that the evidence was insufficient on both sides.
The lower court judge was correct in not granting the J.N.O.V. because neither side presented enough evidence to convince the jury, nor the judge in that matter, and "the grant or denial of a new trial has always been within the sound discretion of the trial judge, and absent an abuse of discretion, this Court is `without power to disturb such a determination.'" American Fire Protection, 653 So.2d 1387, 1390 (Miss. 1995) (quoting Muse v. Hutchins, 559 So.2d 1031, 1034 (Miss. 1990)).
"Unless the lower court abused its discretion in finding that the verdict was not against the overwhelming weight of the evidence, we will not reverse." James v. Mabus, 574 So.2d 596, 601 (Miss. 1990) (citing Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1177 (Miss. 1990); Cummins v. Century 21 Action Realty, Inc., 563 So.2d 1382, 1386 (Miss. 1990); see Miss.R.Civ.Pro. 59)). Under such circumstances it cannot be held that the lower court abused its discretion.

CONCLUSION
The lower court was correct in not granting Misso's summary judgment, thus the lower court will be affirmed on this issue. The lower court was also correct in not granting Oliver's directed verdict and J.N.O.V. or in the alternative a new trial and will be affirmed on these issues.
However, in the case before this Court, the power exercised by the election commission was judicial. The only power conferred, and the only duty required of the election commission, in relation to the canvass, should be to count the votes, based upon the returns as made by the managers, and to give certificates to those receiving a majority of the votes. The election commission should not go beyond or behind the returns, and reject votes, or accept votes previously rejected, or otherwise inquire into the validity or conduct of the election. The election commission should have no judicial discretion as to the validity of rejected or contested votes. We reverse the decision of the Circuit Court of Noxubee County on this issue and hold that the commissioners did not have the authority to judge the legality or validity of the returns as these questions are best left for the judiciary and the court below.
*1377 ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
DAN M. LEE, C.J., PRATHER, P.J., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.