# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-EC-00407-SCT

*SHERIEL F. PERKINS*

*v.*

*CAROLYN McADAMS*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/2016 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIE JAMES PERKINS, SR. |
| ATTORNEYS FOR APPELLEE: | KATHLEEN ELIZABETH CARRINGTON |
| | MARK W. GARRIGA |
| | LEMUEL E. MONTGOMERY, III |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | ON DIRECT APPEAL: DISMISSED AS MOOT.  ON CROSS-APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 10/19/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KING AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Sheriel F. Perkins lost the 2013 Greenwood mayoral race by 206 votes.  She filed an election contest against the winner, Mayor Carolyn McAdams.  In her complaint, Perkins alleged illegal voting and fraud.  But at trial, the only evidence she produced was that fifty-two absentee ballots were wrongly counted and one absentee ballot and nine affidavit ballots were wrongly rejected.  Her other claims of illegal voting and fraud had no evidentiary

support. Thus, the trial court granted McAdams's motion for a directed verdict and entered a judgment in McAdams's favor.

¶2.     Though Perkins appealed, the contested mayoral term ended June 30, 2017. So her appeal is now moot. Conceding mootness, Perkins still insists we should consider the merits of her illegal-voting claim under the public-interest exception to the mootness doctrine. However, Perkins presented no evidence that *anyone* voted illegally in a precinct outside of his or her residence. Rather, according to her own witnesses, it was the *election materials*—not the voters—that ended up in the wrong precincts. And Mississippi statutory law is clear that misdelivery of election materials shall not prevent the holding of an election.[1] Instead, poll managers should provide a suitable substitute procedure, which is exactly what occurred here.

¶3.     Because the Legislature has already clearly spoken on this issue, there is no need to apply the public-interest exception to the mootness doctrine and address the merits of Perkins's appeal. We therefore dismiss Perkins's appeal as moot.

¶4.     McAdams has cross-appealed, raising two attorney's fees issues that are not moot. For reasons explained below, we affirm the trial court's denial of McAdams's motion to alter the judgment to include a sanction of attorney's fees. But we reverse and remand the trial court's award of $6,440 in attorney's fees to Perkins.

**Background Facts and Procedural History**

---

[1] Miss. Code Ann. § 23-15-249 (Rev. 2015).

2

¶5.    On June 4, 2013, the City of Greenwood, Mississippi, held a general mayoral election. There were two candidates: Perkins and McAdams. When all votes were counted, McAdams received 2,618 votes to Perkins's 2,412.

## I.    Complaint

¶6.    Perkins sued McAdams in the Circuit Court of Leflore County on June 24, 2013—exactly twenty days after the election.[2] She claimed she had won the majority of legal votes. She requested a jury trial on the merits of the election contest at the earliest date practicable. And, based on the outcome of that trial, she asked to be declared the winner of the 2013 Greenwood mayoral race and that McAdams be removed from office. Alternatively, she sought a special election.

¶7.    The thirteen-count complaint not only brought a Section 23-15-951 election contest but also asserted several other state and federal claims. Because of the federal claims, McAdams removed the action to federal court. In response, Perkins moved to amend her complaint to drop the federal claims. The federal court remanded this action to the Leflore County Circuit Court in October 2014. Her amended complaint still alleged multiple state-election-law violations and fraud. It also called into question the legality of hundreds of votes cast.

## II.    Motion for Summary Judgment

---

[2] *See* Miss. Code Ann. § 23-15-951 (Rev. 2015) (permitting "a person desiring to contest the election of another person returned as elected to any office within any county, . . . within twenty (20) days after the election, [to] file a petition in the office of the clerk of the circuit court of the county, setting forth the grounds upon which the election is contested").

¶8. Two months after remand, McAdams filed for summary judgment. Following a hearing, the trial court denied this motion on May 20, 2015. The court found Perkins had "raise[d] sufficient issues that are genuine to this dispute," which "if proved by proper evidence, could possibly change the results of the Mayoral Election or could possibly prove the will of the electorate had been frustrated." The court's order expressly reserved consideration of costs until a "final hearing of this cause."[3]

### III. Trial

¶9. The jury trial for Perkins's election contest began on September 28, 2015. During Perkins's opening statement, her counsel asserted the evidence would show:

(1) the pollbooks and voter-receipt books for Wards 1 and 2 were put in the wrong place, leading to 295 Ward 1 residents voting illegally in Ward 2, and 139 Ward 2 residents voting illegally in Ward 1;

(2) fifty-eight absentee ballots were improperly counted, one absentee ballot was improperly rejected, and thirty-four affidavit ballots were improperly rejected;

(3) four nonresidents "returned" to Greenwood and voted; and

(4) two residents, Walter Hunter and Andre Williams, only voted for McAdams because, in Hunter's case, McAdams directed the city to install a culvert on his property and, in Williams's case, she paid his mother's bills.[4]

---

[3] *See* M.R.C.P. 56(h) (entitling the prevailing party to the "reasonable expenses in attending the hearing of the motion").

[4] Perkins did not attempt to prove the allegations raised in her complaint that the election commission refused to give statutory voter assistance to African American voters who requested it and that mandatory lock-and-seal requirements were violated.

¶10.    Perkins called fourteen witnesses, including McAdams, who was called adversely. At the close of Perkins's evidence, McAdams moved for a directed verdict. Going through Perkins's complaint count-by-count, she argued each claim either had been abandoned or unproven. Specifically, McAdams argued Perkins failed to support her allegations that Ward 1 residents voted in Ward 2 and vice versa, that nonresidents voted, or that McAdams fraudulently compensated voters. McAdams did concede one absentee ballot should have been counted and fifty-two nonconforming absentee ballots should not have been counted. McAdams further acknowledged that Perkins at least presented evidence that nine affidavit ballots had been wrongfully rejected. But still, given those concessions, that accounts for only sixty-two votes. And sixty-two votes were not enough to affect the outcome of the election, which McAdams won by 206 votes.

¶11.    The court granted McAdams's motion for a directed verdict, finding Perkins had failed to make out a prima facie case on any claim in her amended complaint.[5]

¶12.    Before the court adjourned, Perkins noted there was one final matter—the recovery of attorney's fees based on McAdams's unsuccessful motion for summary judgment. *See* M.R.C.P. 56(h). McAdams argued against the court granting a discretionary attorney's-fee

_____

    [5] Specifically, the court found no one testified residents of Wards 1 and 2 voted in the wrong precinct; there was no proof nonresidents voted; and there was no proof of wrongdoing—by McAdams or anyone else. Instead, the evidence showed the city fulfilled its duty to provide proper drainage by installing a culvert at a major intersection on *city property*, which happened to run alongside Hunter's property. While Hunter benefitted, this is not different from any other citizen benefitting from a public work. Finally, Perkins could not prove her claim McAdams promised to give Williams anything if he voted for her. Instead, in the court's view, Williams, a young African American, had been unfairly "hopped on" because he publicly supported McAdams, who is white.

5

award, in light of what happened at trial. But the court responded Rule 56 mandated the award of attorney's fees. *But see* M.R.C.P. 56.

### IV.    Final Judgment

¶13.    On October 19, 2015, the court entered an order dismissing Perkins's complaint with prejudice. That same day, the court entered an order granting Perkins's pending motion for $6,440 in attorney's fees—the cost of defending the motion for summary judgment.

¶14.    Four days later, McAdams filed a Rule 59(e) motion to amend the judgment. *See* M.R.C.P. 59(e). Citing Mississippi Rule of Civil Procedure 11, McAdams requested the court add to its judgment the assessment of costs and fees against Perkins based on her "frivolous" claims. After a hearing, the court denied this motion.

¶15.    On February 18, 2016, the court entered its final judgment. Perkins timely filed a notice of appeal, and McAdams cross-appealed.

### Perkins's Appeal: *Directed Verdict*

¶16.    On appeal, Perkins argues the trial court erred by granting McAdams a directed verdict. But because the mayoral term she sought has ended, Perkins concedes there is no relief now available to her. So her appeal is moot. *See **Misso v. Oliver***, 666 So. 2d 1366, 1369 (Miss. 1996) ("This case is moot because even if Misso persuades us that the trial court erred, it is impossible to reinstate Misso, or hold another special election, since the general election has since been held.").

¶17.    Perkins asks us to consider the merits of her appeal under the public-interest exception to the mootness doctrine. *See **Sartin v. Barlow***, 196 Miss. 159, 169-70, 16 So. 2d 372, 376

(1944). She asserts a decision by this Court is necessary to resolve "the central underlying issue" she raises on appeal—"whether a voter can legally cast a vote in a precinct other than that of his or her residence."

¶18. This Court's rule against advisory opinions extends to election contests. *Sheldon v. Ladner*, 205 Miss. 264, 269-70, 38 So. 2d 718, 719 (1949). However, because the speed of the judicial process is often slower than the election process, this Court recognizes "election cases often present questions 'capable of repetition, yet evading review.'" *Misso*, 666 So. 2d at 1369 (quoting *Moore v. Ogilvie*, 394 U.S. 814, 89 S. Ct. 1493, 23 L. Ed. 2d 1 (1969)). So in *Sartin*, this Court made "an exception to the general rule as respects moot cases, when the question concerns a matter of such a nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct." *Sartin*, 196 Miss. at 170, 16 So. 2d at 376. We applied that exception again in *Misso*, because "the need for resolution reflect[ed] a continuing controversy in the election area and this appeal [wa]s one of public interest." *Misso*, 666 So. 2d at 1369. Here, by contrast, the compelling need to stop a corrupt practice, as in *Sartin*,[6] or to provide much needed clarity for future elections, as in *Misso*,[7] is not present. Instead, clear statutory law

---

[6] *Sartin* involved a circuit clerk's refusal to allow a primary election contestant to exercise his statutory right to inspect the ballot boxes. The clerk said "he had been directed in writing by the chairman of the County Democratic Executive Committee not to permit the examination." *Sartin*, 196 Miss. at 164, 16 So. 2d at 374. So the question before the Court was whether the clerk could refuse the inspection at the bidding of a political party.

[7] *Misso* involved the election commission's decision to open the sealed election boxes and recount the votes the day after the election. The commission decided to count ballots the election managers had rejected, leading to a different outcome in the election. *Misso*, 666 So. 2d at 1367-68. Misso argued the election commissioners lacked authority to

governs the main election-related issue Perkins raises on appeal, leaving no need to address the moot appeal.

¶19. Citing Mississippi Code Section 23-15-11, Perkins insists the law requires a voter to vote in his or her respective voting precinct. *See* Miss. Code Ann. § 23-15-11 (Rev. 2015) (qualifying voter to vote in precinct of his or her residence); *see also* Miss. Code Ann. § 23-15-571(3)(a) (Rev. 2015) (providing grounds to challenge a vote because "the voter is not a registered voter in that precinct"). We agree. Section 23-15-11 appears to qualify a voter to vote in his or her precinct *only*.

¶20. But we disagree with Perkins that she presented evidence to the trial court that hundreds voted illegally in Wards 1 and 2 the morning of the election. Perkins presented two witnesses—Rosetta Harris, Perkins's pollwatcher for Ward 1, and State Senator Derrick Terrell Simmons, Perkins's pollwatcher for Ward 2. Both testified there was chaos and confusion when the polls opened the morning of the election. Apparently, voters could not find their names on the pollbooks. So Ward 1 voters went down the street to the nearby Ward 2 polling station. Finding their names on the books there, they signed the book, obtained receipts, and returned to their own precincts with their receipts to vote. The same was true for Ward 2 voters, who went to Ward 1, signed the book, obtained receipts, and returned to vote. According to Harris and Senator Simmons, this procedure lasted about two

---

override the election managers. Because the relevant statutes were silent and because "the complained of action will certainly recur," this Court decided to address the merits of Misso's moot appeal through the public-interest exception. *Id.* at 1368-69.

hours, when election managers swapped the election materials to their proper polling stations. At that point, more than 400 votes had been cast in these two precincts.

¶21. Importantly, neither witness testified any Ward 1 or 2 voters voted in the wrong precinct. Viewed favorably, Perkins's evidence showed it was the *pollbooks*, not the voters, that were in the wrong precinct for the first two hours the polls were open.

¶22. Perkins contends this mishap vitiates every vote cast until the error was corrected. But that is not what our law says. According to clear statute, this irregular procedure did not render the votes cast illegal. When a mishap occurs with the delivery of election boxes, the Legislature mandates the election must proceed as well as possible. According to Mississippi Code Section 23-15-249:

> The failure to distribute to the different voting places the pollbooks containing the alphabetical list of voters, or the ballot boxes provided for, shall not prevent the holding of an election, but in such case the poll managers shall proceed to hold the election without the books and ballot boxes, and shall provide some suitable substitute for the ballot boxes, and conform as nearly as possible to the law in the reception and disposition of the official ballots.

Thus, when the Wards 1 and 2 poll managers realized the election boxes had been misdelivered, by proceeding with the election, they were complying with Section 23-15-249. And by directing voters to go next door and sign the pollbook and obtain a receipt before returning to vote, the poll managers "provided[d] some suitable substitute for the ballot boxes." In light of the circumstances, they "conform[ed] as nearly as possible to the law in

the reception and disposition of the official ballots." Miss. Code Ann. 23-15-249. Thus, under Section 23-15-249, the votes cast during this time period were not illegal.[8]

¶23. So unlike **Misso**, where this Court found the relevant statutes were "silent,"[9] here, the Legislature has clearly spoken through Section 23-15-249. Thus, the law is already established and there is no compelling need for this Court to "declare and enforce a rule for future conduct." **Sartin**, 196 Miss. at 170, 16 So. 2d at 376.

¶24. We, therefore, dismiss Perkins's appeal as moot.

### McAdams's Cross-Appeal: *Attorney's Fees*

¶25. McAdams's cross-appeal is not moot. She raises two issues, both related to attorney's fees.

---

[8] The same can be said of the 234 absentee ballots cast in Wards 1 and 2, which Perkins claims were also illegal. According to Harris and another witness, the absentee votes for Wards 1 and 2 were not "counted" at the polling place. Instead, they were sent to the courthouse to be "counted." Presumably, when Perkins argues the absentee ballots were not "counted" at the polling stations, she means the procedures of Mississippi Code Section 23-15-639(2)(a) and (2)(b) (Rev. 2015) to verify and mark ballots as accepted or rejected were not performed in Wards 1 and 2, because Section 23-15-639(2)(d) actually requires the accepted ballots to be counted at the central tabulation point. *See* Miss. Code Ann. § 23-15-639(2) (Rev. 2015). But Perkins fails to show how conducting the procedures of Section 23-15-639(2)(a) and (b) at the courthouse instead of the polling place—if indeed that was what happened—would have so impacted the validity of all absentee ballots cast in Wards 1 and 2 that must be tossed out. *See* **Fouche v. Ragland**, 424 So. 2d 559, 562 (Miss. 1982) (refusing to throw out absentee ballots based on a "purely technical . . . defect" that did not "affect the validity of these [absentee] votes"—especially where "there was no fraud or intentional wrongdoing in this regard"). Perkins's evidence, even when viewed favorably, did not prove any fraud or intentional wrongdoing. *See* **Rogers v. Holder**, 636 So. 2d 645, 647 (Miss. 1994) (holding that, "absent evidence of fraud or some intentional wrong, technical irregularities will not invalidate an election"). Instead, any irregularity in procedure was due to the misdelivery of the election boxes, which Section 23-15-249 makes clear does not invalidate the election.

[9] **Misso**, 666 So. 2d at 1371.

10

## I. Rule 11 Motion for Sanctions

¶26. McAdams first asserts the trial court abused its discretion when it denied her post-trial motion for attorney's fees.[10] In her motion, McAdams argued Perkins should be sanctioned under Mississippi Rule of Civil Procedure 11 and/or the Litigation Accountability Act of 1988 because her complaint was "frivolous." Under Rule 11(b), "If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees." M.R.C.P. 11(b). The Litigation Accountability Act similarly authorizes the trial court to include in its judgment an award of attorneys' fees if an attorney or party brought an action or asserted a claim "without substantial justification" or "unnecessarily expanded the proceedings." Miss. Code Ann. § 11-55-5(1) (Rev. 2012).

¶27. As a preliminary matter, McAdams suggests the trial court erred by failing to weigh the relevant factors on the record. While Section 11-55-7 does list mandatory factors to consider, this requirement is triggered "[w]hen granting an award of costs and attorney's fees." Miss. Code Ann. § 11-55-7 (Rev. 2012). Here, costs and attorney's fees were denied. So the trial court was under no statutory duty to make on-the-record findings on these factors.

---

[10] *See* **Russell v. Lewis Grocer Co.**, 552 So. 2d 113, 117 (Miss. 1989) (holding that a post-trial motion for sanctions is, in effect, a Rule 59(e) motion to alter or amend the judgment).

¶28. McAdams's main contention is that the trial court erred when it found Perkins's complaint was not frivolous. "A pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success." *Leaf River Forest Prods., Inc. v. Deakle*, 661 So. 2d 188, 195 (Miss. 1995). A claim that is merely "weak" or "light-headed" does not meet this definition of frivolous. *Id.*

¶29. In ruling Perkins's election contest was not frivolous, the trial court focused on the fact "human mistakes [had been] made by the poll workers in arranging the Election Materials for Wards 1 and 2, [and] the information available to Perkins . . . at the time of the Complaint." In other words, the court found Perkins's claims that the Wards 1 and 2 mixup rendered hundreds of votes illegal—though too "light-headed" to send to a jury—could not be said to be without hope or viability.

¶30. McAdams, by contrast, focuses on Perkins's *other* claims—the ones she either abandoned before trial or did not raise on appeal. She argues the trial court failed to recognize *these* claims were without hope. The fact, however, that these claims turned out to be too "weak" to present to the jury or, once presented, to cause the jury to decide in her favor does not necessarily make them "frivolous." *See Deakle*, 661 So. 2d at 195. We find this to be especially so in the context of an election contest. By statute, Perkins had only twenty days to inspect the ballot boxes, gather evidence, and file her petition. *See* Miss. Code Ann. § 23-15-951 (Rev. 2015). And in finding her petition was not frivolous, the trial court rightly considered the information available to Perkins at the time she filed her contest. And what that information showed is that there had been some confusion in Wards 1

and 2—precincts that heavily favored McAdams—giving Perkins some hope that she may have actually received more legal votes.

¶31.    For this reason, we find no abuse of discretion and affirm the trial court's post-trial judgment denying McAdams's request for sanctions.

### II.    Rule 56 Award of Attorney's Fees

¶32.    Second, McAdams appeals the trial court's award to Perkins of $6,440 in attorney's fees—the amount of fees accrued defending against McAdams's motion for summary judgment. Significantly, this sum represented attorney's fees, not expenses. Under Rule 56, "If summary judgment is denied the court *shall* award to the prevailing party the reasonable expenses incurred in attending the hearing of the motion and *may*, if it finds that the motion is without reasonable cause, award attorneys' fees." M.R.C.P. 56(h) (emphasis added).

¶33.    McAdams contends the trial court erred by finding Rule 56(h) mandated attorney's fees, not just reasonable expenses. We agree. As the trial judge commented, "I believe [Rule 56] says shall be awarded if you are successful, and I'm of the opinion that the rule demands that I do that, and so it will be ordered . . . ." This clearly was a misinterpretation of Rule 56(h). Under Rule 56(h), the "shall" refers only to "reasonable expenses incurred in attending the hearing." It does not refer to attorney's fees, which are discretionary and must be based on a "find[ing] that the [summary-judgment] motion is without reasonable cause."

¶34.    Here, according to the trial judge, the $6,440 fee award was not based on finding McAdams's summary-judgment motion had been without reasonable cause, but instead was based on the erroneous belief such award was mandatory. Therefore, we reverse the $6,440

13

award and remand this issue to the trial court determine whether McAdams's summary-judgment motion was "without reasonable cause," thus justifying a discretionary attorney's fee award. The trial court shall also award Perkins her "reasonable expenses incurred in attending the [summary-judgment] hearing." M.R.C.P. 56(h).

**Conclusion**

¶35. Based on the clear language of Section 23-15-249 and the fact the election managers in Wards 1 and 2 did the best they could after discovering the elections materials had been misdelivered, there is no issue of illegal voting warranting application of the public-interest exception to the mootness doctrine. Thus, we dismiss Perkins's appeal as moot.

¶36. On cross-appeal, we affirm the post-trial judgment denying McAdams's request for sanctions but we reverse the post-trial award to Perkins of $6,440 in attorney's fees and remand the issue of Rule 56(h) costs and fees to the trial court.

¶37. **ON DIRECT APPEAL: DISMISSED AS MOOT. ON CROSS-APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

14